**OREGON COUNTY R–IV SCHOOL DISTRICT, Plaintiff–Appellant,**

v.

**Bob LeMON, Defendant–Respondent.**

No. 15088.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 29, 1987.

Duane Benton, Jefferson City, N.C. Brill, West Plains, for plaintiff-appellant.

Sally E. Barker, David C. Holtzman, Schuchat, Cook & Werner, St. Louis, for defendant-respondent.

FLANIGAN, Judge.

Plaintiff-appellant Oregon County R–IV School District brought this action in the Circuit Court of Oregon County against defendant-respondent Bob LeMon seeking a judgment determining whether the school district was required to honor LeMon's written request, dated April 11, 1986, for "a complete list of all students' names, addresses and telephone numbers as you have them listed."[1]

The petition alleged that the school district, "a public governmental body," § 610.010,[2] on June 2, 1986, informed LeMon that it "was concerned about the confidentiality of the records requested and, therefore, could not furnish the information until that issue had been resolved." The petition further alleged that the school district "is in doubt about the legality of closing the records referred to above and, therefore, brings this action to ascertain the propriety of its refusal to furnish the information requested." The petition prayed that the court, pursuant to § 610.027.5,[3] enter judgment "that the action of [the school district] in closing the records referred to above was proper."

There were no significant factual disputes. The trial court, sitting without a jury, entered judgment against the school district and in favor of LeMon and required the disclosure of the requested information. The school district appeals.[4]

The school district asserts that it properly "closed the student records," and the trial court erred in ruling otherwise, on these grounds:

(a) The school district may vote that the Missouri Division of Health Cards are

---

1. LeMon's request was contained in a letter bearing the letterhead "Missouri NEA, an Affiliate of the National Educational Association, Southwest Regional Office, Springfield, Missouri." In the trial court the attorneys representing LeMon also filed certain pleadings on behalf of Missouri National Educational Association. In the trial court and in this court both parties have treated LeMon and Missouri National Educational Association as privies and attach no significance to the fact that some pleadings were filed by the association rather than by LeMon. This court accords the record the same treatment.

2. Except where otherwise indicated, all references to statutes are to RSMo, 1986, V.A.M.S. "A board ... of any ... school district" is a "public governmental body." § 610.010(2).

3. Section 610.027.5 reads, in pertinent part: "A public governmental body which is in doubt about the legality of closing a particular meeting, record, or vote may bring suit at the expense of that public governmental body in the circuit court of the county of the public governmental body's principal place of business to ascertain the propriety of any such action, or seek a formal opinion of the attorney general or an attorney for the governmental body."

A "closed record" is "any record closed to the public." § 610.010(1).

4. One portion of the judgment required that reasonable costs of stenographic services necessary to extract the information be assessed against LeMon and in the event the school district did not make the information available within 60 days, a special master, named in the judgment, was to have access to the records in order to extract the information and deliver it to LeMon. The cost of the special master was assessed against LeMon. Neither side has challenged said portion.

closed records in accordance with § 610.025.3.

(b) The "census card" and the "enrollment card" are exempt from public inspection because "of the General Assembly's repeal of the statute [§ 171.151 RSMo 1978] that they be open to the inspection of the public."

(c) Section 20 U.S.C. § 1232g, an amendment to the Family Education Rights and Privacy Act of 1974, "gives no private right of action to respondent LeMon."

(d) The requirement of § 610.010(4) that student records shall be open for inspection by parents and students excludes inspection by the general public.

(e) A judgment in a prior action between the parties was not res judicata on the issues raised in this action.

Respondent LeMon takes issue with the school district with respect to each of the five grounds, which will be considered in order.

Sections 610.010–610.025, which contain no provision according themselves a title, have been called the Sunshine Law, *Cohen*

v. *Poelker*, 520 S.W.2d 50, 52 (Mo. banc 1975); *Remington v. City of Boonville*, 701 S.W.2d 804, 805 (Mo.App.1985); *Wilson v. McNeal*, 575 S.W.2d 802, 804 (Mo.App. 1978), and the Open Meetings Act, *State ex rel. Bd. of Pub. Utilities v. Crow*, 592 S.W.2d 285, 287 (Mo.App.1979). Additional portions of the Sunshine Law which are germane to this appeal are set forth below.[5]

The common law gave access to public records only where the citizen could show that the purpose of inspection was to vindicate a public or private right. *Hyde v. City of Columbia*, 637 S.W.2d 251, 258 (Mo.App. 1982).

"Chapter 610 represents a legislative determination and declaration of the public policy of the state relating to meetings, records, and votes of *all* public governmental bodies; that policy being, in general, that such meetings, records and votes be open and available to the people these bodies serve." *Cohen v. Poelker*, supra, at 54.

Chapter 610 "opens to the public—even without an interest to vindicate—the meetings and records of those entrusted with

5. Section 610.010 reads, in pertinent part:
"As used in sections 610.010 to 610.030 and 610.100 to 610.115, unless the context otherwise indicates, the following terms mean:

.   .   .   .   .

(4) 'Public record', any record retained by or of any public governmental body including any report, survey, memorandum, or other document or study prepared and presented to the public governmental body by a consultant or other professional service paid for in whole or in part by public funds; provided, however, that personally identifiable student records maintained by public educational institutions shall be open for inspection by the parents, guardian or other custodian of students under the age of eighteen years and by the parents, guardian or other custodian and the student if the student is over the age of eighteen years."
Section 610.015 reads, in pertinent part:
"Except as provided in section 610.025, and except as otherwise provided by law, ... public records shall be open to the public for inspection and duplication."
Section 610.025 reads, in pertinent part:
"3. Any nonjudicial mental health proceedings and proceedings involving physical health, ... may be a closed meeting, closed record, or closed vote.

4. Other meetings, records or votes as otherwise provided by law may be a closed meeting, closed record, or closed vote.

5. Before any meeting, record, or vote may be a closed meeting, closed record, or closed vote, the governmental body shall vote on the question of making the meeting, record, or vote closed and such question shall receive an affirmative public vote of a majority of the quorum of the body. The vote of each member on the question of holding the closed meeting, record, or vote and the reason for holding the closed meeting, record, or vote by reference to a specific reason under the provisions of this section shall be announced publicly at an open session and entered into the minutes. Notice of the closed meeting, record, or vote shall also be given as provided in section 610.020. A closed meeting, record, or vote shall be held only to the extent a closed meeting, record, or vote is necessary for the specific reason announced and the governmental body shall not discuss any business during a closed meeting, record, or vote which does not directly relate to the specific reason announced as justification for the closed meeting, record, or vote.

6. Nothing in this section shall be construed as requiring a public governmental body to hold a closed meeting, record, or vote to discuss or act upon any matter."

the public business," *Hyde v. City of Columbia,* supra, at 259, although certain records may be closed under § 610.025, and other records are not open to the public by reason of the language "except as otherwise provided by law," contained in § 610.015. When a right to inspect exists, it is exercisable only during business hours and is subject to reasonable rules and conditions imposed by the proper authorities. *State ex rel. Gray v. Brigham,* 622 S.W.2d 734, 735 (Mo.App.1981). Subject to the exceptions described in it, § 610.015 mandates public disclosure of public records. *Wilson v. McNeal,* supra, at 805–806. The Sunshine Law confers rights on the general public and not on any particular segment of it. *State ex rel. Bd. of Pub. Utilities v. Crow,* supra, at 289.

■ In support of ground (a) the brief of the school district states:

"The school district must keep the Missouri Division of Health card in order to comply with a state statute and regulation. § 167.181.4 RSMo 1986; 13 C.S.R. 50–110.010. The school district employs the standard form MCH–4 of the Missouri Division of Health. (L.F. 88). The card is designed in order to provide relevant health information (which includes the student's name, telephone number and address) in order that the school district can comply with state regulation. 13 C.S.R. 50–110.010(1)(a).

The Division of Health card definitely concerns the 'physical health' of students. Such a record may be a closed record.

Any ... proceedings involving physical health ... may be a closed meeting, closed record, or closed vote [610.025.3 RSMo 1986].

The ... school district may vote that the Division of Health card is a 'closed record', which means it is 'closed to the public.' § 610.010(1) RSMo 1986."

The argument is unsound. LeMon did not request any information concerning the physical health of any student or any record of a proceeding involving physical health. The request was limited to "a complete list of all students' names, addresses and telephone numbers as you have them listed." The school district does not deny that it has records containing the requested information. The school district has not challenged the method by which the trial court's judgment required the requested information to be made available to LeMon. See footnote 4.

The school district argues that the health records are themselves not open to public inspection because they are "proceedings involving physical health." § 610.025.3. This court need not, and does not, rule on the soundness of that argument. Even if the argument is sound, it does not aid the school district. The *requested* information was not afforded any specific protection from disclosure by § 610.025.3, and the mere fact that the requested information may also be contained in health records does not make the requested information unavailable for public inspection.

Further, the school district's argument gives too much scope to § 610.025 and insufficient scope to § 610.015. Section 610.015 requires that public records shall be open to the public for inspection and duplication, with two exceptions.

The first exception is "except as provided in § 610.025." Section 610.025 enumerates a variety of subjects which a public governmental body, upon complying with § 610.025.5, may "close." That does not mean, however, that a public governmental body can close *any* record merely by complying with § 610.025.5. The records closed must pertain to the topics enumerated in § 610.025. To hold otherwise would permit any public governmental body to evade the mandate of § 610.015 by merely following the procedure of § 610.025.5.[6]

---

6. "The decision to allow access to governmental records should not rest solely with the custodian. 'Law has reached its finest moments when it has freed man from the unlimited discretion of some ruler, some civil or military official, some bureaucrat. Where discretion is absolute,

man has always suffered.' *United States v. Wunderlich* (1951), 342 U.S. 98, 101, 72 S.Ct. 154, 156, 96 L.Ed. 113. Douglas, J., dissenting." *Dayton Newspapers, Inc. v. City of Dayton,* 45 Ohio St.2d 107, 341 N.E.2d 576, 578 (1976).

The second exception, found in § 610.015, is "except as otherwise provided by law." " '[E]xcept as otherwise provided by law,' means except as otherwise provided by statute." *Yates v. Casteel,* 329 Mo. 1101, 49 S.W.2d 68, 69 (1932). Section 610.-015 requires, in effect, that public records be open to the public for inspection and duplication unless a statute, either § 610.025 or some other statute, prohibits their disclosure.

An example of the operation of the second exception is found in *State ex rel. Miller v. Crist,* 579 S.W.2d 837 (Mo.App. 1979). There a member of the public sought disclosure of certain reports filed in the office of the Commissioner of Finance. The commissioner was prohibited by §§ 361.070 and 361.080.2 from disclosing the contents of the reports "unless required by law to do so in the discharge of the duties of his said office" or as a witness in court. Sections 361.070 and 361.-080.2 were enacted prior to the enactment of the Sunshine Law. The court of appeals, ruling that the reports were not open to public inspection, held that §§ 361.070 and 361.080 dealt "with a specific and narrow category of records" and that those statutes "contain their own exceptions, themselves quite specific, lifting the curtain of confidentiality when required by law 'in the discharge of the duties of (the Commissioner's) office' and in court proceedings."

In order for the information requested here to be unavailable to LeMon, it must be shielded by § 610.025, and it is not, or it must be shielded by some other statute. Some of the other grounds advanced by the school district seek to invoke the second exception and will be dealt with in due course. Ground (a) has no merit.

■ In support of ground (b) the school district makes this argument:

Section 171.151 RSMo 1969 read:

"Each public school of the state shall keep a daily register in which shall be entered the name, age, date of entrance and record of attendance of each pupil and the studies pursued by the pupil. *The register shall be open to the inspec-*

*tion of the public at all times.*" (Emphasis added.)

In 1977 § 171.151 was amended, (L.1977, p. 350, § A), by the deletion of the emphasized sentence.

The school district completes its argument by stating:

"By repealing and reenacting § 171.151 in 1977, the General Assembly intended to accomplish something by the amendment. The 'something' it accomplished is clear—to delete the requirement that the census and enrollment cards shall be open to public inspection. The General Assembly has provided 'otherwise' (than in § 610.015 RSMo 1986) that the enrollment and census cards would *not* be open to the public for inspection."

This court rejects that argument. It is true that the present form of § 171.151 does not specifically require that the daily register be open to public inspection. It is also true, however, that in its present form § 171.151 does not specifically prohibit public inspection of the register. The mandate of § 610.015 is that public records be open to the public for inspection and duplication unless a statute prohibits their disclosure. "Where the language of a statute is plain and admits of but one meaning, there is no room for construction." *State ex rel. Mo. State Bd. v. Southworth,* 704 S.W.2d 219, 224 (Mo. banc 1986). The language of § 610.015 is plain and requires no construction.

The school district's argument asks this court to find a legislative intent to *deny* public access to the register from the fact that the legislature deleted a provision specifically *permitting* such access. Such a finding would be at war with the plain wording of § 610.015. Indeed it could well be argued that the legislature deleted that language from § 171.151 because the enactment of § 610.015 in 1973 made the deleted language superfluous. Ground (b) has no merit.

■ In connection with ground (c), the school district points out that it "has received and now receives various funds un-

der Title 20 of the U.S.Code." That being so, the school district falls within the purview of the Family Educational Rights and Privacy Act (20 U.S.C.A. § 1232g, implemented by regulations in 34 C.F.R. 99.1, et seq.).

"[20 U.S.C.A. § 1232g] serves two functions. First, it provides access to student records by students and their parents. Second, it establishes the privacy of those records." *Kestenbaum v. Michigan State University*, 97 Mich.App. 5, 294 N.W.2d 228, 231 (1980). See also *Rios v. Read*, 73 F.R.D. 589, 597 (E.D.N.Y.1977).

Section 1232g contains certain provisions pertaining to "directory information" and "personally identifiable information." Section 1232g(a)(5)(A) reads, in pertinent part: "For the purposes of this section the term 'directory information' relating to a student includes the following: the student's name, address, telephone listing, ..."

34 C.F.R. 99.3 contains this definition of "personally identifiable":

" 'Personally identifiable' means that the data or information includes (a) the name of a student, the student's parent, or other family member, (b) the address of the student, (c) a personal identifier, such as the student's social security number or student number, (d) a list of personal characteristics which would make the student's identity easily traceable, or (e) other information which would make the student's identity easily traceable."

34 C.F.R. 99.30 and 99.31 contain regulations concerning the disclosure, by an educational institution or agency, of personally identifiable information, other than directory information, from the education records of a student. Generally, written consent of the parent or, in some instances, the student is required for disclosure but, in certain enumerated instances, disclosure of personally identifiable information may be made without that consent.

34 C.F.R. 99.37 permits disclosure of directory information from the education records of a student who is in attendance at the institution if that information has been designated as directory information under § 99.37(c).

Section 99.37(c) reads:

"An educational agency or institution which wishes to designate directory information shall give public notice of the following:

(1) The categories of personally identifiable information which the institution has designated as directory information;

(2) The right of a parent of the student or the eligible student to refuse to permit the designation of any or all of the categories of personally identifiable information with respect to that student as directory information; and

(3) The period of time within which the parent of the student or the eligible student must inform the agency or institution in writing that such personally identifiable information is not to be designated as directory information with respect to that student."

In the case at bar the school district, several months prior to receipt of LeMon's written request dated April 11, 1986, gave a public notice concerning the making public of directory information. The adequacy of that notice to comply with § 99.37(c) was not challenged by either side in the trial court and it is not challenged here. Among the categories of information designated as directory information in that notice was the following: "Student's name, address, telephone listing."

The brief of the school district states:

"The federal law requires the school district to give public notice of the categories of information as designated as 'directory information' and to allow the parents a reasonable time to object to release without their consent. Federal law then provides that a school district *may* release directory information to the public, yet receive federal funds.... The purpose of [U.S.C.A. § 1232g] is to deny federal funds to school districts that do not protect the privacy of students.... The federal regulations, ... make clear that a school district *may* disclose directory information without loss of federal funds. The federal law

and the federal regulations do not *require* disclosure of directory information. There is no logic to the Circuit Court's rationale that because federal law permits disclosure, state law requires disclosure."

There is no merit in that argument. Disclosure of the requested information, under the circumstances here, is required because the Sunshine Act, and specifically § 610.015, requires disclosure. The second exception, found in § 610.015 and discussed in connection with ground (a), is "except as otherwise provided by law." It cannot properly be said that 20 U.S.C.A. § 1232g fits, under the facts here, the second exception found in § 610.015. "Where names and addresses have been properly designated as 'directory information,' [20 U.S.C.A. § 1232g] does not bar disclosure." *Krauss v. Nassau Community College*, 122 Misc. 2d 218, 469 N.Y.S.2d 553, 555[1] (Sup.1983).

The federal statute, and the regulations implementing it, permit disclosure of the requested information where, as here, the school district has complied with 34 C.F.R. 99.37. Thus, so far as ground (c) is concerned, the trial court properly required disclosure because of the general mandate of § 610.015 and because 20 U.S.C.A. § 1232g, under the circumstances here, did not bar disclosure.

The school district cites *Girardier v. Webster College*, 563 F.2d 1267, 1277 (8th Cir.1977), for the proposition that a violation of 20 U.S.C.A. § 1232g does not give rise to a private cause of action. That principle is of no aid to the school district. Of course the school district itself, and not LeMon, instituted the instant action. Such institution was proper under § 610.027.5. Further, under § 610.027.1 any aggrieved person, taxpayer or citizen of Missouri or the attorney general or a prosecuting attorney may seek judicial enforcement of the Sunshine Law. The school district does not argue that LeMon is not an aggrieved person. Ground (c) has no merit.

In support of ground (d) the school district emphasizes the proviso of § 610.010(4), set forth in footnote 5, dealing with "personally identifiable student records." That proviso was placed in the statute by amendment in 1977. As mentioned in connection with ground (c), 20 U.S.C.A. § 1232g contains provisions pertaining to "personally identifiable information" appearing in student records, and 34 C.F.R. 99.3 defines "personally identifiable."

20 U.S.C.A. § 1232g(a)(1)(A) provides that no funds shall be made available under any applicable program to any educational institution which has a policy of denying the parents of students the right to inspect and review the educational records of their children. 20 U.S.C.A. § 1232g(d), in effect, gives a student who has attained the age of 18 the rights accorded to the parents of the student. In view of the "personally identifiable student records" terminology in the proviso in § 610.010(4) and the reference in that proviso to students over the age of 18 years, it seems clear that the legislature inserted the proviso so as to avoid any risk of suffering loss of federal funds by reason of 20 U.S.C.A. § 1232g(a)(1)(A).

The school district argues that § 610.010(4) requires that personally identifiable student records be open for inspection by parents and students. The school district says, "If student records were always and completely public records, there would be no reason for the express statement of access by parents and students. The only reason for the [proviso in § 610.010(4)] is that the proviso is a limit on public access to student records. The express mention of access by students and parents excluded access by the general public."

This court rejects that argument. In *Cohen v. Poelker*, 520 S.W.2d 50, 52[1] (Mo. banc 1975), the court said:

"The several sections of Chapter 610, considered together, *speak loudly and clearly* for the General Assembly that its intent in enacting the Sunshine Law, so-called was that all meetings of members of public governmental bodies (except those described in § 610.025) at which the peoples' business is considered must be open to the people and not conducted in secrecy, and also that the *records* of

**560**

the body and the votes of its members *must be open.*" (Emphasis added.)

■ The mandate of § 610.015 is that public records must be disclosed in the absence of another statute barring disclosure. The school district's argument, if accepted, would permit that mandate to be countermanded by an implication of a bar of disclosure rather than an express statutory bar. Such a result would not be in keeping with the legislative intent as pronounced in *Cohen v. Poelker,* supra.

■ Disclosure of the requested information, under the circumstances here, is required because the Sunshine Act, and specifically § 610.015, requires disclosure. The second exception, found in § 610.015 and discussed in connection with ground (a), is "except as otherwise provided by law." The proviso in § 610.010(4) does not contain language *closing* "personally identifiable student records" to anyone. It merely mandates that they be *open* to the parents or, as the case may be, to the student. The proviso in § 610.010(4) does not satisfy the second exception found in § 610.015. Ground (d) has no merit.

Ground (e) pertains to a prior action between the parties in which the trial court held that the school district was not required to disclose to LeMon, pursuant to the latter's previous request, the "names and addresses of *parents* with children in school." There was language in the judgment in the prior action which was subject to the interpretation that if the request had been made for the names, addresses and telephone numbers of the *students,* disclosure would not be denied. Perhaps that language prompted LeMon's request in the instant action.

The school district argues that the issue in the prior action was access to information concerning the parents and that the issue in the present action is access to information concerning students. Citing *Riggs v. Moise,* 344 Mo. 177, 128 S.W.2d 632, 635 (1939), the school district argues that "what is decided within the issue is res adjudicata; anything beyond is coram non judice and void." The school district argues that the language in the former judgment concerning access to information concerning students is coram non judice.

It is true that the trial court, in entering the instant judgment, relied in part upon what it regarded as the res adjudicata effect of the former judgment. The trial court, however, reached the right result. It is unnecessary to determine whether the trial court's reasoning was erroneous. Under the circumstances here, § 610.015 required disclosure of the requested information to LeMon. "[A] correct decision will not be disturbed because the court gave a wrong or insufficient reason therefor." *Edgar v. Fitzpatrick,* 377 S.W.2d 314, 318[12] (Mo. banc 1964). To similar effect see *Kenilworth Ins. Co. v. Cole,* 587 S.W.2d 93, 96[2–5] (Mo.App.1979).

The judgment is affirmed.

PREWITT, P.J., and MAUS, J., concur.

HOGAN, J., disqualified.